IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

IN THE MATTER OF:

NAME:    KIM S. ROBINSON            CHAPTER 13 CASE NO: 10-1996-8-SWH

ADDRESS:  2717 Summers Stream Drive
          Raleigh, NC 27610

SSN:      XXX-XX-4011

**DEBTOR.**

___

KIM S. ROBINSON,

      DEBTOR/PLAINTIFF

versus             AP No. _____

WORLD OMNI FINANCIAL CORP. d/b/a
SOUTHEAST TOYOTA FINANCE,

      DEFENDANT.

___

**Complaint of the Debtor for Declaratory Judgment to
Declare Secured Status of Motor Vehicle, Damages & Sanctions for
Violation of the Automatic Stay, and Damages Violation of the
North Carolina Unfair and Deceptive Trade Practices Act.**

**Introduction**

1. This is an action brought by the Debtor/Plaintiff (hereinafter "Debtor") for a Declaratory Judgment, injunctive and equitable relief as provided for by Rules 2016, 7001(7) and 7001(9), of the Federal Rules of Bankruptcy Procedure ("Rules of Bankruptcy Procedure").

2. This is also an action to determine the secured status of the Defendant in this case pursuant to Sections 105(a), 502, 544 and 506 of the Bankruptcy Code and Rule 3007 of the Bankruptcy Rules.

3. The Debtor is also seeking the recovery of actual and punitive damages from the Defendant pursuant to Section 105(a) of Title 11 of the Untied States Code commonly referred to as the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (hereinafter the "Bankruptcy Code"). Additionally, Debtor is seeking statutory actual and punitive damages under the North Carolina Unfair and Deceptive Trade Practices Act as well as damages and sanctions for violation of the Automatic Stay.

## JURISDICTION

4. This is a core proceeding as that term is defined by Section 157(b)(2) of Title 28 of the United States Code in that it concerns claims and matters arising out of the administration of this bankruptcy case and rights duly established under Title 11 of the United States Code and other applicable federal law.

5. This Court has both personal and subject matter jurisdiction to hear this case pursuant to Section 1334 of Title 28 of the United States Code and Section 157(b)(2) of Title 28 of the United States Code.

6. Venue lies in this District pursuant to Section 1391(b) of Title 28 of the United States Code.

## PARTIES & FACTS OF THE CASE

7. This case was commenced by the filing of a Chapter 13 petition with the Clerk of this court on March 14, 2010. The Bankruptcy Noticing Center notified Defendant of Debtor's bankruptcy case.

8. Debtor is an individual, resides in Wake County, North Carolina, within the

Eastern District of North Carolina is over the age of 18 and otherwise *sui juris*.

9. Southeast Toyota Finance is a registered fictitious name in the State of Florida for World Omni Financial Corp.

10. Defendant, World Omni Financial Corp is a Florida Corporation licensed in and doing business in the State of North Carolina, capable of owning property, suing and being sued.

11. World Omni Auto Receivables, LLC is an unnamed party involved in the structured transaction, a Delaware Limited Liability Company and wholly owned subsidiary of World Omni Financial Corp.

12. World Omni Auto Receivables Trust, 2007-A is an unnamed party involved in the structured transaction, a Statutory Trust under the laws of the State of Delaware formed pursuant to a trust agreement between World Omni Auto Receivables, LLC and Deutsche Bank Trust Company as "owner trustee" of the trust.

13. Debtor listed the asset in dispute *to wit* 1 2007 Toyota Highlander SUV as personal property in Schedule B with an estimated value of $16,499.

14. Debtor listed the debt in schedule D of the petition. The listed creditor was Southeastern Toyota Financial. Debtor disputed the claim to the extent of the amount owed on the date that the petition was filed, disputed that the listed party was the lawful holder of the note and disputed that the listed party had a perfected security interest in the motor vehicle.

15. An Order for Relief under the provisions of Chapter 13 of the Bankruptcy Code was duly entered by this Court upon the filing of the petition. This order served to invoke the provisions of Section 362(a) said Code.

16. The 341(a) meeting of creditors was held on April 23, 2010 in Raleigh, North Carolina. No representative of World Omni Financial Corp appeared at the 341 meeting.

17. On April 27, 2010, the Defendant, through counsel, filed a proof of claim number 7

in this matter. The proof of claim purports to be a secured claim for "World Omni Financial Corp, its Successors and Assigns" in the amount of $14,193.68 as a first lien against the Debtor's vehicle. Under paragraph 3a. of said Proof of Claim, Defendant stated that the Debtor may have listed this debt as Southeastern Toyota Finance.

18. The Defendant is engaged of the business of providing financing to duly licensed franchised dealers of the Toyota Motor Corporation, which financing allows consumers to purchase new and used motor vehicles from the dealers. Such financing is arranged by the agreement of the Defendant to purchase certain designated Retail Installment contracts from the respective dealers. In connection with these transactions, the respective dealers are required to file proper documentation with their respective State Divisions of Motor Vehicles so as to reflect on the certificates of title that the Defendant holds a first lien position with respect to the financed vehicles.

19. In the ordinary course of business, the Debtor alleges that the Defendant sells all or a significant portion of its automotive finance receivables to trusts and third-party entities in asset-backed securitizations and whole loan sales. The Debtor believes and therefore alleges that these asset-backed securitizations involve the "true sale" of the retail installment obligations from the Defendant to the trusts and third parties. The trusts and third parties purchase these assets with cash raised through the issuance of beneficial interest (usually bonds, debt instruments, etc.) to third-party investors (hereinafter collectively referred to as "the trusts").

20. The Debtor believes that after the sale of the contracts the respective trusts and third-party entities become the legal and beneficial owners of the financial instruments.

21. The Debtor believes and therefore alleges that in many of these transactions the Defendant retains a residual beneficial interest in the cash flow from the receivables, but that such a residual interest is subordinated to the rights of the owners of the trusts to the income

streams. To that extent, the residual interest is a credit enhancement to the investors in the respective trusts designed to absorb substantially all credit defaults, prepayments of loans, and interest-rate risk of the receivables transferred to the trusts. The Debtor further alleges on information and belief that the retention of these "residual" rights does not provide the Defendant with any direct interest in any of the underlying assets of the respective trusts.

22. The Debtor believes and therefore alleges that in a smaller number of transactions, the Defendant transfers the automotive finance receivables to third-party trusts in transactions wherein it does not retain any residual interest in the trusts and therefore bears no risk of loss related to the receivables. The Debtor alleges that the Defendant refers to these transactions as "whole loan sales."

23. The Debtor alleges that these trusts are considered Qualifying Special Purpose Entities ("QSPEs") under the Generally Accepted Account Standards (SFAS 140) and are therefore are not considered to be a "consolidated group" with Defendant. The Debtor also believes that these trusts are considered to be variable interest entities ("VIEs") under applicable Federal law and regulations.

24. Since most of the trusts are QSPEs, they are also multi-seller and multi-collateralized bank conduits subject to regulation by the Office of Thrift Supervision and the Comptroller of the Currency as well as the Securities and Exchange Commission.

25. The Debtor alleges that the bonds or investment certificates issued by the trusts are subject to specific registration requirements as provided for by the Securities and Exchange Commission Act. Under the Act, the trusts are required to file and register with the SEC a Prospectus and Prospectus Supplement for the benefit of the potential third-party investors. The Debtor alleges that the purpose of these required filings is to, among other things, apprise the public of all known risks associated with the investments.

26. The Debtor alleges that the Prospectus and Prospectus Supplements for all of the trusts utilized by the Defendant clearly and unequivocally state that under the motor vehicle laws of some states the trusts are required to file an application for a duplicate title with the state regulatory agencies so as to show the trusts as the successor lien-holder on the motor vehicle. The Debtor alleges that these documents also state that the trusts do NOT file such applications because of the expenses involved in the preparation and filing of such a large number of applications. As a result, the investors are notified that one of the risks of investing in the trusts is that the trust will be an unsecured creditor if any individual consumer with a debt owned by the trusts files for bankruptcy. The Debtor alleges that the documents clearly state that this would be the result because of the failure of the trust to perfect its interest on the title certificate and noting the trust as the lien holder on the duplicate title certificate.

27. The debtor alleges that, pursuant to Section 20-58 of the North Carolina Uniform Motor Vehicle Act, a security interest in a motor vehicle may only be perfected by the application to and notation of the name and address of the holder of the security interest on the certificate of title for the motor vehicle. Specifically, the debtor alleges that Section 20-58(a)(2) of the North Carolina General Statutes provides:

> If the vehicle is registered in this State, the application for notation of a security interest shall be in the form prescribed by the Division, signed by the debtor, and contain the date of application of each security interest, and name and address of the secured party from whom information concerning the security interest may be obtained. The application must be accompanied by the existing certificate of title unless in the possession of a prior secured party. If there is an existing certificate of title issued by this or any other jurisdiction in the possession of a prior secured party, the application for notation of the security interest shall in addition contain the name and address of such prior secured party. An application for notation of a security interest may be signed by the secured party instead of the debtor when the application is accompanied by documentary evidence of the applicant's security interest in that motor vehicle signed by the debtor and by affidavit of the applicant stating the reason the debtor did not sign the application. In the event the certificate cannot be obtained for recordation of the security interest, when title remains in the name of the debtor, the Division shall cancel the certificate and issue a new certificate of title listing all the respective security interests.

28.	The Debtor is informed and believes and therefore alleges that under the mandatory provisions of Section 20-58.2 of the North Carolina General Statutes if the application for notation of a security interest with the required fee is delivered to the Division of Motor Vehicles within 20 days after the date of the security agreement, the security interest is perfected as of the date of the execution of the security agreement.  Otherwise, the Debtor alleges that the security interest is not perfected until the date of the actual delivery of the application to the Division.

29.	The Debtor further alleges that, pursuant to Section 20-58.6 of the North Carolina General Statutes, a secured party named in a certificate of title to a motor vehicle is under a legal duty and obligation to disclose to the Division any change in status of the position of the said secured party.  If the said secured party does not disclose such information within 10 days after his lien has been paid and satisfied, said Section provides that such failure to disclose constitutes a criminal misdemeanor under North Carolina Law.  Furthermore, on June 7, 2010, the undersigned sent notice pursuant to counsel for Defendant demanding information regarding the lien on the vehicle pursuant to Section 20-58.6 of the North Carolina General Statutes.  Please see attached Exhibit "A."  Despite follow up contact with Defendant's attorney, no documentation or response to the request has been provided.

30.	The Debtor alleges that, under Section 20-58.4(a) of the North Carolina General Statutes, upon the satisfaction or other discharge of a security interest in a motor vehicle for which the certificate of tile is in the possession of the secured party, the secured party shall within 10 days after demand and, in any event, within 30 days, execute a release of his security interest, in the space provided therefor on the certificate, and mail or deliver the certificate and release to

the next secured party named therein, or if none, to the owner or other person authorized to receive the certificate for the owner.

31.     The debtor alleges that a violation of Section 20-58.4 is also a violation of the North Carolina Retail Installment Sales Act, codified as Chapter 25A of the General Statutes (hereinafter "RISA").  Under Section 25A-44(4) of RISA, any "willful violation of any provision of this Chapter shall constitute an unfair trade practice under G.S. 75-1.1."

32.     The debtor alleges that, pursuant to Section 20-58.3 of the North Carolina General Statutes, the "assignee of a security interest may have the certificate of title endorsed or issued with the assignee named as the secured party, upon delivering to the Division, with the required fee, an assignment by the secured party named in the certificate of title together with the original certificate of title.

33.     The debtor alleges that the sale of the RISA in this case by the Defendant to a trust as alleged herein was for cash or equivalent consideration and that such transaction triggered the mandatory provisions of Section 20-58.4.  The debtor further alleges that rather than complying with this mandatory provision, the Defendant did not release its lien on the certificate of title but rather retained such title with the canceled lien duly noted thereon.  A copy of the title noting "World Omni Financial Corp" as first lien holder is attached to Proof of Claim # 7 filed with the Court in this matter.

34.     The debtor also alleges that after the sale of the RISA to the trust, the trust failed by its own admission to apply for a duplicate title under Section 20-58.3 of the North Carolina General Statues.

35.     The debtor alleges that the Defendant and the trust had actual knowledge of the North Carolina motor vehicle title laws and of the consequences of their failure to follow the

same but in order to avoid the expenses of compliance willfully and intentionally elected not to comply.

36. Upon information and belief, after a review of the SEC filings for World Omni Financial Corporation, the note was sold from Mark Jacobson Toyota to World Omni Financial Corp, D.B.A., Southeastern Toyota Financial. World Omni Financial Corp sold the note to World Omni Financial Receivables, LLC, a wholly owned subsidiary of World Omni Financial Corp. World Omni Financial Receivables, LLC then sold the notes to the World Omni Auto Receivables Trust, 2007-A. *See the prospectus filed with the S.E.C. for the World Omni Auto Receivables Trust 2007-A at:*

www.sec.gov/Archives/edgar/data/1083199/000119312507034990/d424b2.htm#srom81597_3

(*See footnote 1*)1

37. To the extent that the note pertaining to this vehicle is not located in the World Omni Auto Receivables Trust, 2007-A, Plaintiff, upon information and belief alleges that the note is owned by a similar trust created and held in the same manner, serviced and not owned by the Defendant, World Omni Financial Corp.

**FIRST CLAIM FOR RELIEF**
**DECLARATORY JUDGMENT THAT BOTH DEFENDANT AND THE TRUST ARE UNSECURED, VOIDING THE LIEN OF DEFENDANT, AND FOR TURNOVER OF THE PROPERTY TO THE TRUSTEE PURSUANT TO 11 U.S.C. SECTION 544**

38. The allegations contained in paragraphs 1 through 37 of this complaint are realleged and incorporated herein by this reference.

---

[1] It is important for the court to note that a hyperlink is included in this document in order to avoid filing voluminous filings with the S.E.C. For the parties and their roles in the transaction at issue, please see page S-1 of the final prospectus. For the allegations set forth in paragraph 21 of this complaint, please see pages 2, 3 and 38 of the final prospectus.

39. The Plaintiff, pursuant to 11 U.S.C. Section 544 shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by:

> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists; . . . .

40. Defendant, by virtue of the sale of the debtor's note to the trust, no longer has a valid security interest in the note. It is important for the Court to note that there were at least two "true sales" of the note in order for the note to be placed into the securitized trust.

41. Defendant has never transferred its security interest pursuant to the North Carolina Motor Vehicle Title laws to the trust as evidenced by Defendant's filing of a proof of claim in this matter asserting secured status and the filing of the title reflecting the Defendant as first lien holder.

42. The trust is not notated as a lien holder on the certificate of title, and is therefore, not perfected under North Carolina law pursuant to the exclusive method of perfection set forth in Motor Vehicle Titling Act, Chapter 20 of North Carolina General Statutes, . The trust, by not being properly perfected, has only the rights of an unsecured creditor.

43. The Plaintiff's interest under 11 U.S.C. Section 544 is therefore superior to the interest of the trust, and the lien of Defendant may be avoided.

44. Based upon the foregoing, the property should be declared unsecured and turned over to the trustee as property of the estate.

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF THE AUTOMATIC STAY PURSUANT TO**
**11 U.S.C. SECTION 362(a)(3)**

45. The allegations contained in paragraphs 1 through 44 of this complaint are realleged and incorporated herein by this reference.

46. Defendant has represented to the court in its Proof of Claim that it holds a validly perfected, first priority security interest in debtor's vehicle.

47. This representation is false and misleading since the Receivables Purchase Agreement states that the parties' intent is that the transfer of the receivables is intended to constitute a sale between the parties. *A copy of the Receivables Purchase Agreement for the World Omni Auto Receivables Trust, 2007-A can be found at* http://www.sec.gov/Archives/edgar/data/1083199/000119312507041166/dex991.htm The Prospectus and Prospectus Supplement clearly indicate that the note is owned by the trust. Furthermore, Defendant and the trust both have knowledge that the trust may not be perfected in some states because of the language in the Prospectus under "risk factors."

48. Defendant's Proof of Claim is an attempt to exercise control over property of the estate in which it has no enforceable rights or interests to the detriment of the estate, the trustee, and other unsecured creditors. If the vehicle is deemed unsecured, then there will be non-exempt assets subject to sale by the trustee. The trustee is, therefore, subject to the loss of his statutory percentage of the funds realized from the sale of the non-exempt property. Unsecured creditors will be harmed due to the preferential treatment received by another unsecured creditor, the Defendant.

49. Defendant is therefore liable for actual damages for violation of the automatic stay.

50. Defendant should also be liable for punitive damages and sanctions for its willful misrepresentation of its legal status as the owner and holder of the note at issue herein and for

seeking to collect money for the estate as a secured creditor when Defendant knew by its own admissions that it was in fact unsecured.

### THIRD CLAIM FOR RELIEF
### FILING A FALSE AND FRAUDULENT PROOF OF CLAIM

51. The allegations contained in paragraphs 1 through 50 of this complaint are realleged and incorporated herein by this reference.

52. Defendant has falsely represented to the court in its Proof of Claim that it holds a validly perfected, first priority security interest in debtor's vehicle.

53. The conduct of the Defendant in attempting to file an improper proof of claim constitutes fraud on the Court.

54. The Plaintiff alleges that this Court has authority under Section 105(a) of Title 11 of the United States Code to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

55. The Plaintiff alleges that this Court should impose sanctions against the Defendant for knowingly filing an improper claim in this case.

### FOURTH CLAIM FOR RELIEF
### Violation of the North Carolina Unfair and
### Deceptive Practices Act.

56. The allegations in paragraphs 1 through 55 of this complaint are realleged and incorporated herein by this reference.

57. The actions and conduct of the Defendant in this case constitute unfair and deceptive acts and practices in violation of the provisions of Section 75-1.1 of the North Carolina General Statutes. Specifically, the unfair acts and practices of Defendant arose out of its failure to comply with the mandatory provisions of Chapter 20 of the North Carolina General Statutes.

58. As a result of the unfair acts and deceptive practices of Defendant, the Plaintiff is entitled to the recovery of statutory damages, actual and treble damages under the provision of Section 75-16 of the North Carolina General Statutes.

59. Additionally, the conduct of the Defendant violates various provisions of the North Carolina Retail Instalment Sales Act which constitutes a violation of the North Carolina Unfair and Deceptive Trade Practices Act.

60. As a result of the unfair acts and deceptive practices of the Defendant, the Plaintiff is entitled to the recovery of reasonable legal fees under the provisions of Section 75-16.1 of the North Carolina General Statutes.

WHEREFORE, the Plaintiff respectfully prays of the Court as follows:

A. That this Court issue an Order avoiding the security interest claimed by Defendant in the subject vehicle;

B. That this Court issue an Order for the turnover of the subject vehicle to the trustee;

C. That the Plaintiff be awarded actual damages for Defendant's violation of the automatic stay;

D. That the Defendant be sanctioned and a monetary award be given to the Plaintiff for Defendant's violation of the automatic stay;

E. That Plaintiff be awarded punitive damages for Defendant's violation of the automatic stay;

D. That Plaintiff be awarded attorney's fees and costs incurred in this matter;

E. That this Court order Defendant to pay additional actual damages and statutory damages in a sum to be determined by the Court for violation of N.C.G.S. Section 75-50, et seq.;

F.  That the Defendant compensate the Chapter 13 Trustee for any additional costs and expenses caused to the Chapter 13 Trustee for the violations set forth above;

F.  For all other just and proper relief to which Plaintiff may be entitled.

**DEMAND FOR TRIAL BY JURY**

Plaintiff, KIM ROBINSON, demands a trial by jury on all counts so triable.

Dated this the 5th day of July, 2010

/s/ Michael A. Dye
Michael A. Dye
NC Bar # 34983
The Law Offices of Dye & Weatherly, PLLC
19 W. Hargett St., Suite 214
Raleigh, NC 27601
Phone: (919)828-7977
Fax: (919)238-7281
Email: Michael@EDNCBankruptcy.com