**SO ORDERED.**

**SIGNED this 01 day of February, 2011.**



*Stephani W. Humrickhouse*
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| KIM S. ROBINSON | 10-01996-8-SWH |
| DEBTOR | |
| KIM S. ROBINSON, | |
| PLAINTIFF, | ADVERSARY PROCEEDING NO. |
| v. | 10-00151-8-SWH-AP |
| WORLD OMNI FINANCIAL CORP. d/b/a SOUTHEAST TOYOTA FINANCE, | |
| DEFENDANT. | |

**ORDER DETERMINING LACK OF STANDING TO ASSERT CERTAIN CLAIMS**

The matter before the court is the defendant World Omni Financial Corp. d/b/a Southeast Toyota Finance's motion to dismiss the debtor's complaint. A hearing on the motion was held in Raleigh, North Carolina, on November 23, 2010.

The debtor purchased a 2007 Toyota Highlander SUV (the "Vehicle") from Mark Jacobson Toyota in January of 2007 and obtained financing through Southeast Toyota Finance, a registered fictitious name for the defendant, World Omni Financial Corp. ("WOFC"). WOFC is engaged in the business of providing financing to duly licensed franchised dealers of Toyota Motor Corporation by purchasing certain designated retail installment contracts from them. The debtor's retail installment contract was subsequently assigned by WOFC to World Omni Auto Receivables, LCC, and then to World Omni Auto Receivables Trust 2007 (the "Trust"), in an asset-backed securitization. The debtor's certificate of title indicates that a first lien on the Vehicle is held by the defendant, who also remains the servicer of the retail installment contract on behalf of the Trust, but does not hold the indebtedness.

The debtor filed a Chapter 13 petition on March 14, 2010, and listed the Vehicle on her Schedule B as having an estimated value of $16,499. The debtor listed Southeast Toyota Finance on her Schedule D and indicated that she disputed the amount of the claim, whether Southeast Toyota was the valid holder of the claim, and the secured status of the claim. The Trust's alleged security interest in the vehicle is not noted on the certificate of title. On April 27, 2010, "World Omni Financial Corp. Its Successors and Assigns" filed a proof of claim in the case asserting a secured claim in the amount of $14,193.68. No objection has been filed to the proof of claim as of the date of this order.

On July 5, 2010, the debtor initiated an adversary proceeding against WOFC, seeking a determination that (1) WOFC is unsecured and that any lien claimed by it should be avoided (the "Avoidance Count"), (2) WOFC violated the automatic stay (the "Stay Count"), (3) WOFC filed a fraudulent proof of claim (the "Proof of Claim Count"), and (4) WOFC committed unfair and

2

deceptive trade practices (the "UFDTP Count").  WOFC filed a motion to dismiss the complaint on September 2, 2010.  In her response to the motion, the debtor voluntarily dismissed the Stay Count and the Proof of Claim Count pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Bankruptcy Rule 7041, and sought leave to amend the UFDTP Count.

The substantive issue presented to the court by the parties is whether an assignee of a lender, whose claim is secured by a motor vehicle but whose security interest is not noted on the certificate of title, can prevail when the security interest is attacked under § 544 of the Bankruptcy Code.  The court declines to reach the issue at this time because, as is more fully discussed below, it finds that the debtor does not have standing to assert the Avoidance Count.

## DISCUSSION

In ruling on a motion to dismiss, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff.  Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250 (4th Cir. 2009).  However, before considering application of that standard to the facts and law presented by the parties, the court must address the issue of standing, which is determined as of the time the action was commenced.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 570 (1992).

The Avoidance Count contained in the complaint is brought by the debtor pursuant to § 544 of the Bankruptcy Code (the "Code").  The debtor recites in paragraph 39 of the complaint that "the Plaintiff" has certain "strong arm" powers set forth in § 544 which enable her, as the plaintiff, to

3

avoid improperly perfected security interests. However, § 544(a) provides that the trustee shall have such powers:

> *The trustee* shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by - -
>
>> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists . . . .

11 U.S.C. § 544(a) (emphasis added). The section refers explicitly to rights and powers of a trustee and does not mention the chapter 13 debtor. In re Binghi, 299 B.R. 300, 301 (Bankr. S.D.N.Y. 2003). Accordingly, the debtor cannot base her standing on this section and must find the authority to bring the action elsewhere in the Code.

The rights and powers of a chapter 13 debtor are set out in § 1303 of the Code as follows:

> Subject to any limitations on a trustee under this chapter, the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(l), of this title.

The language of this provision clearly indicates that chapter 13 debtors were not granted the trustee's avoidance powers found in chapter 5 of the Code. Although the Fourth Circuit has not weighed in on the issue, there is guidance from the Middle District of North Carolina. In In re Hollar, 174 B.R. 198, 203 (M.D.N.C. 1994), the court held that "there is no statutory authority in Chapter 13 which grants a Chapter 13 debtor independent standing to sue under [the Chapter 5 avoidance powers]." The majority of courts to consider this issue have applied similar statutory analysis to reach the same conclusion. See In re Stangel, 219 F.3d 498, 501 (5th Cir. 2000), cert. denied, Stangel v. United States, 532 U.S. 910 (2001) (holding that Chapter 13 debtors do not have

4

standing to assert trustee's strong arm's power, relying on Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1 (2000) and In re Hamilton, 125 F.3d 292, 296 (5th Cir.1997) stating that "no specific statutory provision" authorizes chapter 13 debtors to "exercise trustees' avoidance powers"); Binghi, 299 B.R. at 301-302; In re Redditt, 146 B.R. 693, 697 (Bankr.S.D. Miss.1992) (stating that "[b]y the statute's own terms, only the trustee has standing to exercise the strong-arm avoidance powers").

Additional support for this position is found when the limitations on the power of the chapter 13 debtor to bring avoidance actions under § 1303 is compared to §§ 1107 and 1203 of the Code, which explicitly grant debtors under chapter 11 and chapter 12 the rights of a trustee to pursue avoidance actions. This court agrees with other courts which have found that "Congress could have given Chapter 13 debtors the same broad sweep of powers given in Chapter 11 but chose not to do so." Hollar, 174 B.R. at 203. See also In re Steiner, 251 B.R. 137, 140 (Bankr.D. Ariz. 2000) (stating that "Congress did not elect to confer such extraordinary [avoidance] powers on Chapter 13 debtors," and emphasizing the "significant differences between § 1107 and § 1303"); In re Henderson, 133 B.R. 813, 817 (Bankr.W.D. Tex. 1991) (stating that the Code "unambiguously gives avoidance powers to bankruptcy trustees and to chapter 11 and 12 debtors, but not to chapter 13 debtors"). Based upon this analysis, the court finds that the debtor does not have standing to bring the Avoidance Count.

In her final claim, the UFDTP Count, the debtor claims that defendant's alleged violations of Chapters 20 (the North Carolina Motor Vehicle Act) and 25A (the Retail Installment Sales Act) of the North Carolina General Statutes constitute unfair and deceptive acts and practices in violation of chapter 75 of the North Carolina General Statutes, and that such violations give rise to damages

under the provisions of § 75-16.1. Defendant moved to dismiss the UFDTP Count on the grounds that it has not violated either state statute as a matter of law. In response, plaintiff asked the court to allow leave to amend that count.

In light of the fact that neither party raised the standing issue in their papers or at the hearing, and that the standing deficiency can be cured with the joinder of the Chapter 13 trustee, the court will defer final ruling on both the motion to dismiss and the debtor's request for leave to amend the UFDTP Count for 60 days, during which time the trustee is directed to evaluate the causes of action asserted by the debtor in accordance with the standards set forth in Rule 9011 of the Federal Rules of Bankruptcy Procedure and either join the action or affirmatively notify the court and the parties that he does not believe the action is warranted.

**SO ORDERED.**

**END OF DOCUMENT**